UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 4:20-cv-10005-King/Brannon

STEPHEN D. LEONARD,

     Petitioner,

vs.

MARK S. INCH, SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

     Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE RECOMMENDING DENIAL
## OF FEDERAL HABEAS CORPUS PETITION - 28 U.S.C. § 2254

**THIS CAUSE** is before the Court upon Petitioner Stephen D. Leonard's ("Petitioner") *pro se* Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") challenging his convictions and sentences for grand theft and fleeing and eluding entered following a no contest plea in Monroe County Circuit Court, Case No. 2015-CF-665-A-K.  [ECF No. 44]. The State argues this petition should be dismissed because Petitioner is no longer in custody.  [ECF No. 62].  The State further concedes the Petition is timely, but argues some claims are unexhausted and procedurally defaulted, and Petitioner is not entitled to habeas corpus relief.  [ECF No. 62]. Upon consideration of the briefing and the underlying state court record, the Court recommends that the Petition be DENIED.

## I.    BACKGROUND

### A.    *State Criminal Proceedings*

On October 6, 2015, Petitioner was charged by Information with first degree felony grand theft resulting in over $100,000.00 in damage (Count 1) and fleeing and eluding in a vessel

(Count 2).  [ECF No. 61, Ex. C at 16].  At his October 17, 2015 arraignment, Petitioner advised

the court that he was interested in pleading no contest to the charges.  [ECF No. 60 at p. 3].  The

Court advised Petitioner that the case was set for arraignment, but he could thereafter set it for a

plea and sentencing.  [*Id.* at 4].  Later, the Court conducted a thorough arraignment and *Faretta*

proceeding, during which Petitioner indicated he did not want an attorney appointed to represent

him.  [*Id.* at 7, 13].  At that time, when asked if he still wanted to proceed with the "no contest plea

or wait," Petitioner stated that he wanted to proceed with the plea.  [*Id.* at 13].  During the change

of plea proceeding, Petitioner stipulated that the salient facts underlying his convictions and

sentences were as follows:

> ...On September 17, 2015, in the County of Monroe and State of Florida, the
> defendant took from Hurricane Hole Marine, a 31-foot Yellowfin vessel with two
> Suzuki outboard motors that belonged to Charles F. Donney and/or Charles Francis
> Donney, with the intent to permanently deprive the owners of the vessel, being
> valued at more than $1,000.  While in the taking of the vessel, the defendant caused
> over $1,000 in damage to the vessel by repeatedly running it aground, requiring the
> victims to have to complete an overhaul of the engine of this vessel.
>
> Also on that date and time in Monroe County, Florida, the defendant, when
> confronted by Monroe County Sheriff's Officer Spencer Curry at the Key West –
> or the Yacht Club of America, to stop the vessel and to return to the fuel dock, the
> defendant did flee and elude and ignore the lawful commands of Deputy Sheriff
> Curry.

[*Id.* at 16-17].

At an October 28, 2015 hearing on Petitioner's motion to withdraw his plea, Petitioner

again reiterated that he did commit the offenses, did not really want to withdraw his plea, but was

attempting to proffer grounds for a downward departure in sentence due to mitigating

circumstances.  [*Id.* at 22-23].  When asked specifically what he wanted the court to do, Petitioner

responded he wanted to "withdraw the plea and appoint counsel in order to try and get a downward

departure and work out a better plea...."  [*Id.* at 23].  When asked to explain why he thought his

plea should be withdrawn, Petitioner responded he did not believe the court should grant withdrawal of the plea because it had been entered knowingly and willingly. [*Id.*]. Petitioner, however, explained he was asking the court to consider withdrawing the plea to enable Petitioner to proffer a basis for mitigating circumstances. [*Id.* at 23-24]. Petitioner requested and was granted a continuance of the sentencing until December 2, 2015 so that he could confer with Attorney Smith, his standby counsel, regarding presenting mitigating evidence at sentencing. [*Id.*].

Prior to sentencing, Petitioner filed a *pro se* supplement, admitting he committed the charged offenses, but setting forth reasons to support his request for a downward departure in sentence. [ECF No. 61, Ex. E at 21-45]. A few months later, Petitioner wrote a letter to the court complaining that counsel was not properly pursuing the motion for downward departure. [*Id.,* Ex. F at 46]. Thereafter, defense counsel filed several motions, including a motion to continue sentencing to enable further investigation of mitigating evidence, a motion to compel, and motion for appointment of an expert to evaluate Petitioner's competency. [*Id.*, Ex. G at 58-68]. Petitioner sent a second letter to the court reiterating he did not believe counsel was properly investigating and pursuing a motion for downward departure in sentence. [*Id.,* Ex. H at 69-75]. An Order was entered appointing Dr. Holbrook to evaluate Petitioner's competency pursuant to Fla. Stat. § 916.12 and Fla. R. Crim. P. 3.211. [ECF No. 61-1, Ex. I at 2-3]. Following Dr. Holbrook's evaluation of Petitioner, at a May 10, 2016 hearing, Petitioner, together with defense counsel and the State stipulated that Dr. Holbrook found Petitioner competent to proceed. [ECF No. 60 at 61-62]. Meanwhile, Petitioner's request for a thirty-day furlough to conduct his own investigation in support of his motion for downward departure was denied as moot because Petitioner was represented by counsel. [ECF No. 61-1, Exs. K-L at 8-15]. Undeterred, Petitioner continued filing

multiple motions, including a motion for a *Nelson*[1] hearing with supplement thereto, claiming counsel was ineffective for failing to gather evidence to support Petitioner's motion for downward departure. [*Id.,* Exs. M-N at 17-25].

Before a ruling was had on Petitioner's *Nelson* motion, Petitioner appeared for sentencing on August 3, 2016. [ECF No. 60 at 66]. At that time, Petitioner stated he would be representing himself. [*Id.* at 67]. In response, the Court indicated it would need to conduct a *Faretta*[2] inquiry. [*Id.*]. In response to the court's colloquy, Petitioner acknowledged and understood he had the right to have a lawyer represent him, and that if he could not afford to hire an attorney, one would be appointed for him. [*Id.*]. When asked if he wanted to have an attorney appointed to represent him, Petitioner responded that he did not. [*Id.*]. Petitioner affirmed understanding the charges against him, and further affirmed not having any questions for the court. [*Id.*]. Petitioner understood that he would not get any special treatment nor would he be entitled to a continuance because he was representing himself. [*Id.* at 67-68]. Petitioner understood that his access to legal services would be severely limited because he was in custody, and although not required to possess the legal skills or knowledge of an attorney, he would be required to abide by the rules of criminal law and courtroom procedure. [*Id.* at 69]. Petitioner also acknowledged that if he became disruptive the court could terminate his self-representation, remove him from the courtroom, continue any hearings outside Petitioner's presence, and appoint an attorney at that point to continue to represent Petitioner. [*Id.*]. Petitioner also acknowledged that he had previously represented himself in a trial after which the jury found him not guilty of "a very serious criminal offense." [*Id.* at 71]. At

---

[1] *Nelson v. State,* 274 So. 2d 256 (Fla. 4th DCA 1973).

[2] *Faretta v. California,* 422 U.S. 806 (1975).

the conclusion of the colloquy, when asked if he still wanted to represent himself Petitioner indicated that he did, and the court granted the request, stating "All right." [*Id.*].

Thereafter, when asked if he had any "additions, deletions or corrections" to the sentencing guideline scoresheet, Petitioner stated, "No." [*Id.* at 73]. After Petitioner acknowledged there was no legal cause why sentence should not be pronounced, he further agreed with the amount of prior convictions listed therein. [*Id*]. When asked if he wanted to say anything prior to imposition of sentence, Petitioner explained, "No. I do not want to accept the prison time for this. I really don't want to go to prison. The whole purpose of me taking that boat was to seek political asylum to avoid persecution. I am not going to accept prison time...." [*Id.* at 75]. The Court advised Petitioner that he scored 72.525 months, and that he needed "to have some reason to depart from that number," such as a "negotiated plea." [*Id.*]. Otherwise, the court observed it would be required to impose 72.525 months of imprisonment as a minimum unless there is something in mitigation. [*Id*]. When given the chance to speak, the court commented that Petitioner chose to remain silent. [*Id.*]. The State, however, indicated it was willing to agree to a sixty-month term of imprisonment "as a negotiated plea as a downward departure to save you at least a year..." [*Id.*].

The Court again asked Petitioner if he wanted to accept the State's negotiate offer or proceed with the 72.525 minimum sentence unless he could present some evidence in support of mitigation. [*Id.* at 75-76]. In response, Petitioner stated that (1) he was under "extreme duress" at the time of the charged offenses; (2) he feared for his life when he took the boat; and, (3) that, at the time of the charged offenses, he had serious mental issues at the root of his alleged chest pains. [*Id.* at 76-77]. Petitioner emphatically insisted he would not accept prison time on a negotiated plea, and asked that court that if a long prison sentence was required, that it be an extended probation sentence rather than incarceration. [*Id.* at 77]. Next, the trial court adjudicated Petitioner

guilty and sentenced him to two concurrent terms of sixty months of imprisonment. [ECF No. 61-1, Exs. U-V at 44-50]. After his motion to stay and for rehearing were denied, Petitioner prosecuted a direct appeal, raising eight grounds in a *pro se* brief. [*Id.*, Ex. GG at 87-88]. Appellate counsel filed an *Anders*[3] brief, together with a motion to withdraw. [ECF No. 61-2, Exs. HH at 2-16]. Petitioner then filed a *pro se* supplemental brief raising twenty-six grounds for relief, asserting claims of trial court error and appellate counsel ineffectiveness. [*Id.*, Ex. JJ at 29-108].

On February 27, 2019, the appellate court *per curiam* affirmed Petitioner's convictions and sentences without written opinion. *Leonard v. State*, No. 3D16-2298, 270 So. 3d 1241 (Fla. 3d DCA Feb. 27, 2019) (unpublished table decision); [ECF No. 61-3, Ex. KK at 2]. Rehearing was denied on March 19, 2019. [*Id.*, Ex. MM at 10]. For purposes of the federal limitations period, Petitioner's conviction became final on **June 17, 2019,** when the ninety-day period for seeking certiorari review with the United States Supreme Court expired. *See* 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler,* 565 U.S. 134, 149-50 (2012).

Before his conviction became final, Petitioner filed a state habeas corpus petition, assigned case number 3D17-1383, raising the gist of claims 3 and 4[4]--that his appellate counsel failed to assign as error that: (1) the State lacked probable cause and subject matter jurisdiction to prosecute Petitioner, and (2) the trial court erred in dismissing Petitioner's motion to dismissed based on violation of his speedy trial rights. [*Id.*, Ex. OO at 14-15]. On December 13, 2017, the appellate court dismissed the petition as unauthorized because Petitioner's direct appeal was still pending when he filed the state habeas petition. *See Leonard v. State,* No. 3D17-1383, 237 So. 3d 1068

---

[3] *Anders v. California,* 386 U.S. 738 (1967).

[4] Petitioner also raised claim 3 in his second state habeas corpus petition, but the petition was also dismissed because Petitioner's direct appeal was still pending. *See* [ECF No. 61-5, Ex. OOO at 48, Ex. RRR at 66].

(Fla. 3d DCA Dec. 13, 2017); [*Id.,* Ex. RR at 47].  Rehearing was denied on December 22, 2017. [*Id.*, Ex. TTS at 52].  The proceeding concluded with the issuance of the Mandate on January 8, 2018.  [*Id.,* Ex. UU at 54].

**B.**     ***§ 2254 Federal Habeas Corpus Petitions***

After further state court proceedings not relevant to the issues presently before this Court were prosecuted, Petitioner filed his initial federal habeas petition in the District of New Hampshire, which was ultimately transferred to this Court.  [ECF No. 1].  Pursuant to this Court's order, and after further proceedings no relevant here, Petitioner filed his Amended Petition on March 11, 2020, after he signed and handed it to prison officials for mailing in accordance with the mailbox rule.[5]  [ECF No. 44 at 15].

**C.**     ***Petitioner's Claims***

To begin, *pro se* pleadings are liberally construed and held to a less stringent standard than a pleading drafted by an attorney.  *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (per curiam); *Waldman v. Conway,* 871 F.3d 1283, 1289 (11th Cir. 2017) (per curiam) (same).  That leniency, however, "does not give courts license to serve as *de facto* counsel or to rewrite an otherwise deficient pleading in order to sustain an action."  *Shuler v. Ingram & Assocs.,* 441 F. App'x 712, 716 n.3 (11th Cir. 2011) (per curiam); *Golfin v. Sec'y for Dep't of Corr.,* 276 F. App'x 908, 908 (11th Cir. 2008) (per curiam) ("[W]e will not act as *de facto* counsel for a pro se litigant.").  Thus, when construed liberally, Petitioner raises the following five claims:

1.     His arrest is unlawful as it was based on an affidavit which lacked probable cause.  [ECF No. 44 at 5].

_____

[5]Absent evidence to the contrary, in accordance with the prison mailbox rule, a *pro se* prisoner's filing is deemed filed on the date it is delivered to prison authorities for mailing. *Washington v. United States,* 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam); Fed. R. App. 4(c)(1).

2.     The stop of his vessel while in international waters and his ensuing arrest are unlawful.  [ECF No. 44 at 7].

3.     His lawyer was ineffective for failing to challenge the lack of probable cause and lack of subject matter jurisdiction.  [ECF No. 44 at 8].

4.     The trial court erred in denying Petitioner's motion to dismiss based on violation of his speedy trial rights.  [ECF No. 44 at 10].

5.     His appellate attorney was ineffective for failing to include in the record on appeal transcripts of the September 30, 2015 arraignment, and the July 1 and July 8, 2016 pre-trial conference transcripts.  [ECF No. 44 at 16].

## II.     THRESHOLD ISSUES

### A.     *"In Custody" Requirement*

Respondent first seeks dismissal of this federal petition, arguing that the Court lacks jurisdiction because Petitioner is no longer "in custody" under the Judgment entered in Monroe County Circuit Court, Case No. 2015-CF-665-A-K.  [ECF 62 at 2].  Respondent's argument fails.

Federal courts have jurisdiction to consider a habeas petition from a petitioner "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3).  The "in custody" requirement is jurisdictional.  *Stacey v. Warden, Apalachee Corr. Inst.,* 854 F.2d 401, 403 (11th Cir. 1988) (per curiam).  "[A] federal habeas petitioner must be 'in custody' under the conviction or sentence under attack *at the time his petition is filed.*"  *See Diaz v. State of Fla., Fourth Judicial Circuit,* 683 F.3d 1261, 1264 (11th Cir. 2012) ("[A] petitioner in state custody may challenge the first of multiple, consecutive sentences imposed[,] even where the first sentence has already been served. . . .") (quoting *Maleng v. Cook,* 490 U.S. 488, 490-91 (1989) (per curiam)) (emphasis added).  However, the United States Supreme Court has emphasized that "although the phrase 'in custody' is construed broadly – a habeas petitioner cannot satisfy that requirement if he 'suffers no present restraint from' the conviction he seeks to challenge."  *Boone*

*v. Warden, Att'y Gen.,* 800 F. App'x 739, 740 (11th Cir. 2020) (per curiam) (quoting *Garlotte v. Fordice,* 515 U.S. 39, 45 (1995) and *Maleng,* 490 U.S. at 492). As applied, Petitioner was "in custody" at the time the Amended Petition was filed, therefore, the jurisdictional prerequisite of custody was met, and jurisdiction was not defeated by petitioner's subsequent release from custody while the petition was pending adjudication. *See Carafas v. LaVallee,* 391 U.S. 234, 238 (1968). Because Petitioner was "in custody" at the time of filing, Respondent's argument that the court lacks jurisdiction fails because jurisdiction is not defeated by Petitioner's subsequent release from custody during the pendency of this federal petition. *Id.* Therefore, Respondent's request for dismissal of this Petition on that basis should be DENIED.

### B. Mootness

Although the "in custody" requirement has been met, this Court must determine whether the federal habeas petition is now moot. Article III of the United States Constitution extends federal judicial power only to cases or controversies. U.S. Const. art. III, § 2, cl. 1. "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477 (1990). The parties must continue to have a "personal stake in the outcome" of the lawsuit. *Id.* at 478 (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983)). In other words, a petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable decision." *Id.* at 477.

However, there is no longer an Article III case or controversy and a case or issue becomes moot where the injury for which an appellant seeks judicial redress is resolved or disappears prior to the court's decision. *See Burke v. Barnes,* 479 U.S. 361, 363 (1987); *Los Angeles Cnty. v. Davis,* 440 U.S. 625, 631 (1979) (holding that a case is moot when the issues presented are no longer

"live" or the parties lack a legally cognizable interest in the outcome of the litigation, such as where there is no reasonable expectation that the violation will occur again or where interim relief or events have eradicated the effects of the alleged violation); *Mattern v. Sec'y for Dep't of Corr.,* 494 F.3d 1282, 1285 (11th Cir. 2007) ("[A] habeas petitioner who has been released from imprisonment subsequent to his filing a § 2254 petition must establish that his petition still presents a case or controversy under Article III, § 2 of the United States Constitution, and therefore is not moot.").

Petitioner's sentences expired while his federal habeas petition was awaiting adjudication, therefore, "some collateral consequence must be present in order to satisfy the case-or-controversy requirement. *Watkins v. Haynes,* 445 F. App'x 181, 183 (11th Cir. 2011) (per curiam) (citing *Carafas,* 391 U.S. at 237-38) (finding that § 2241 petition was not moot where petitioner was released from prison to supervised release while his habeas corpus petition was pending because success on the petition claims could have altered supervised release portion of petitioner's sentence). Since Petitioner challenges his convictions themselves, his federal habeas petition is not rendered moot unless there is *no possibility* for the imposition of collateral legal consequences on the basis of the challenged conviction. *Minor v. Dugger*, 864 F.2d 124, 125 (11th Cir. 1989) (citing *Malloy v. Purvis*, 681 F.2d 736, 739 (11th Cir. 1982) (emphasis original)). The burden of establishing mootness is on the respondent. *Malloy,* 681 F.2d at 739. Thus, the question is whether, notwithstanding Petitioner's unconditional release, adverse collateral consequences still exist.

The United States Supreme Court has made clear that "once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole--some 'collateral consequence' of the conviction--must exist if the suit is to be maintained." *Id.* at 237-38. "Collateral consequences" include the possible enhancement of a later criminal

sentence or denial of the right to vote, serve on a jury, hold elective office, or hold a license to operate certain kinds of businesses. *Carafas,* 391 U.S. at 237–38 (footnotes and citations omitted); *Spencer*, 523 U.S. at 9; *Maleng*, 490 U.S. at 491-92; *Jamerson v. Secretary for DOC*, 410 F.3d 682, 688 (11th Cir. 2005); *Minor*, 864 F.2d at 125-26. Indeed, when a criminal defendant or habeas petitioner challenges his *conviction*, as opposed to merely his expired *sentence*, federal courts *presume* the existence of collateral consequences staving off a dismissal for mootness. *See United States v. Juvenile Male*, 564 U.S. 932, 936 (2011); *Spencer*, 523 U.S. at 8; *Wolfe v. Coleman*, 681 F.2d 1302, 1305 (11th Cir. 1982); *Williams v. Carter*, 253 Fed.Appx. 914, 916 (11th Cir. 2007). That presumption is applicable given the nature of Petitioner's habeas claims, so even if his release from prison does not involve continued probation or supervision, it does not moot the case.

### C.    Timeliness

Respondent concedes that the Amended Petition was timely filed. [ECF No. 62 at 12]. Because Respondent has explicitly waived the statute of limitations defense, this court need not determine whether the waiver is accurate. *See* 28 U.S.C. §2244(d)(1)-(2); *Wood v. Milyard,* 566 U.S. 463, 473 (2012)[6] (citing *Day v. McDonough,* 547 U.S. 198, 210-11 (2006)).

### D.    Exhaustion

Petitioner asserts that his claims were properly exhausted in a 2018 motion to set aside judgment.  [ECF 44 at 7, 9, 10, 17].  Respondent disagrees, arguing that claims 3 and 4 are unexhausted because they were not "fully presented to the state court." [ECF No. 62 at 13].  As discussed below, Respondent's argument is meritorious.

---

[6] In *Wood,* the United States Supreme Court held that a district court abuses its discretion by considering a statute of limitation defense that has been affirmatively waived, as opposed to merely forfeited. *Wood,* 566 U.S. at 473*; Green v. United States,* 735 F. App'x 687, 688 (11th Cir. 2018) (per curiam) (citing *In Re Jackson,* 826 F.3d 1343, 1348 (11 Cir. 2016) (citing *Day,* 547 U.S.at 210 and *Wood,* 566 U.S. at 473)).

1.      <u>Applicable Law</u>

Pursuant to 28 U.S.C. § 2254(b)-(c), petitioners must exhaust their claims before presenting them in a federal habeas corpus petition.  *See* 28 U.S.C. § 2254(b)(1); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Preston v. Sec'y, Fla. Dep't of Corr.,* 785 F.3d 449, 457 (11th Cir. 2015) (quoting *Lucas v. Sec'y, Dep't of Corr.,* 682 F.3d 1342, 1351 (11th Cir. 2012)).   When petitioners do not properly present their claims to a state court by exhausting those claims and complying with the applicable state procedure, § 2254 may bar federal review of those claims in federal court.  *Mason v. Allen,* 605 F.3d 1114, 1119-20 (11th Cir. 2010) (per curiam) (relying upon 28 U.S.C. § 2254(b)-(c)).

To properly exhaust a claim, petitioners must fairly present "every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review."  *Mason,* 605 F.3d at 1119.  A federal claim must be fairly presented in each appropriate state court in order to alert the state courts to the federal nature of a claim.  *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted).  To make a fair presentation to the state courts, the relevant filings must either explicitly refer to a federal claim or cite to a federal source that would have alerted the reviewing state court of the federal nature of the claim.  *Id.* at 33.  Prisoners can also fairly present their claim by simply labeling their claims as "federal."  *Lucas,* 682 F.3d at 1351.  However, habeas applicants must "do more than scatter some makeshift needles in the haystack of the state court record" to properly exhaust their claim.  *McNair v. Campbell,* 416 F.3d 1291, 1301 (11th Cir. 2005) (quoting *Kelley v. Sec'y, Fla. Dep't of Corr.,* 377 F.3d 1317, 1345 (11th Cir. 2004) (internal quotation marks omitted)).

Where a claim has not been properly exhausted in the State courts and any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, the claim is

procedurally defaulted from review in a federal habeas corpus proceeding. *See Torres v. Sec'y, Dep't of Corr.,* No. 16–17325–E, 2017 WL 5997387, *5 (11th Cir. Jun. 2, 2017) (citing *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999) (per curiam)).

    2.    <u>Analysis</u>

Review of the record reveals that claim 3 was raised by Petitioner in his state habeas corpus petitions. *See* [ECF No. 61-3, Ex. OO at 14-15; ECF No. 61-5, Ex. OOO at 48]. The appellate court dismissed the petition as unauthorized because Petitioner's direct appeal was still pending. *See Leonard v. State,* No. 3D17-1383, 237 So. 3d 1068 (Fla. 3d DCA 2017); [ECF No. 61-3, Ex. RR at 47] and *Leonard v. Jones,* No. 3D18-1614 (Fla. 3d DCA Sept. 18, 2018); [ECF No. 61-5, Ex. RRR at 66]. Regarding claim 4, contrary to Petitioner's assertion, the claim was not raised in the state courts. The substantive issue underlying the ineffective assistance of counsel claim was raised and rejected on direct appeal. *See* [ECF No. 61-3, Ex. OO at 15]. Thus, claims 3 and 4 are unexhausted.

    **E.**    ***Procedural Default***

Because neither claim was properly exhausted, it needs to be determined if the claims are procedurally defaulted from review. Respondent argues claims 3 and 4 are not procedurally defaulted because Petitioner could file a motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850 on or before March 19, 2021. Petitioner has not filed a reply, and it is unclear from the record before this Court whether he has returned to the state court to properly exhaust the claims. At this juncture, if he has not, the claims are potentially procedurally defaulted because the time for timely doing so has expired.

Notably, a procedural default can be overcome or excused by showing cause for the failure to properly present the claim and actual prejudice from the default. *See Jones v. Campbell,* 436

F.3d 1285, 1304 (11th Cir. 2006).  Further, cause for the procedural default of an ineffective assistance of counsel claim can be established where:  (1) Petitioner's ineffective assistance of trial counsel claim is "substantial," meaning it has "some merit;" (2) Petitioner had no counsel or received ineffective assistance of counsel during the initial review collateral proceeding; (3) the ineffective assistance of counsel claim was raised in an initial collateral review proceeding; and, (4) state law required Petitioner to raise the claim in the initial collateral proceeding.  *See Clark v. Comm'r, Ala. Dep't of Corr.,* 988 F.3d 1326, 1330 (11th Cir. 2021) (citing *Trevino v. Thaler,* 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan,* 566 U.S. at 1, 14-17 (2012)); *Lambrix v. Sec'y, Fla. Dep't of Corr.,* 756 F.3d 1246, 1262 n.31 (11th Cir. 2014).  A substantial showing exists where Petitioner has shown that reasonable jurists "would find it debatable whether the petition states a valid claims of a denial of a constitutional right."  *See Clark,* 988 F.3d at 1331 (quoting *Hittson v. GDCP Warden,* 759 F.3d 1210, 1269-7 (11th Cir. 2014) (internal quotation marks omitted) and *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003)).  "To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different."  *Harris v. Comm'r, Ala. Dep't of Corr.,* 353 F.3d 880, 882 (11th Cir. 2017) (citations omitted)). Petitioner has not shown cause and prejudice to circumvent the procedural default of claims 3 and 4.

### F.    *Fundamental Miscarriage of Justice and Actual Innocence*

If Petitioner is unable to show cause and prejudice, he may still be able to circumvent the procedural default of his claims if he can demonstrate that the failure to consider the merits of the claims would endorse a fundamental miscarriage of justice, resulting in the continued incarceration of one who is actually innocent, otherwise would result.  *See McQuiggin v. Perkins,* 569 U.S. 383, 387 (2013); *Ward v. Hall,* 592 F.3d 1144, 1157 (11th Cir. 2010).  This exception "serves as a

gateway through which a [§ 2254] petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." *McQuiggin,* 569 U.S. at 386 (relying on *House v. Bell,* 547 U.S. 518 (2006) and *Schlup v. Delo,* 513 U.S. 298 (1995)).

To qualify under this exception, Petitioner must show that, in light of new evidence, no reasonable juror would have voted to find Petitioner guilty beyond a reasonable doubt. *See McQuiggin,* 569 U.S. at 386 (quoting *Schlup,* 513 U.S. at 329). "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation" will not allow a federal court to review the procedurally defaulted claim through the fundamental miscarriage of justice exception. *Schlup,* 513 U.S. at 316. Further, the exception requires Petitioner to demonstrate actual innocence, not just legal innocence. *See Rozzelle v. Sec'y, Fla. Dep't of Corr.,* 672 F.3d 1000, 1011 (11th Cir. 2012) (per curiam). "Only if [petitioner] can meet the requirements for proving his actual innocence will he 'then be entitled to have his defaulted claim'... considered on its merits." *Id.* at 1285.

Petitioner has not alleged there is any fresh new evidence of his innocence. Thus, even if the unexhausted claim had any merit, this equitable exception does not apply. Therefore, without application of this exception, the claims remain procedurally defaulted from federal habeas corpus review.

## III.    GOVERNING LEGAL PRINCIPLES

### A.    *Standard of Review*

Since this case was filed long-after April 24, 1996, the court's review of a state prisoner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Abdul–Kabir v. Quarterman,* 550 U.S. 233, 246 (2007); *Ledford v. Warden, Ga. Diagnostic & Classification Prison,* 818 F.3d 600, 642 (11th Cir. 2016). The AEDPA ensures that

federal habeas corpus relief works to "guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *See Greene v. Fisher,* 565 U.S. 34, 38 (2011); *Ledford,* 818 F.3d at 642.  The "AEDPA's statutory scheme is designed to strongly discourage" petitioners from presenting new evidence and ensures that "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Cullen v. Pinholster,* 563 U.S. 170, 185 (2011) (citations omitted). The AEDPA standard is both mandatory and difficult to meet.  *White v. Woodall,* 572 U.S. 415, 420 (2014).  It imposes a "highly deferential standard for evaluating state-court rulings and demands that state court decisions be given the benefit of the doubt." *Renico v. Lett,* 559 U.S. 766, 773 (2010) (quotation marks and citation omitted); *Lee v. Comm'r, Ala., Dep't of Corr.*, 726 F.3d 1172, 1192 (11th Cir. 2013) (citations omitted).  The Eleventh Circuit "has stressed that in applying AEDPA deference federal courts are not to take a magnifying glass to the state court opinion or grade the quality of it." *See Meders v. Warden, Ga. Diagnostic Prison,* 911 F.3d 1335, 1350 (11th Cir. 2019).  Thus, deferential review under § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits.  *See Cullen,* 563 U.S. at 182; *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011).

Under the AEDPA, a federal court may not grant a habeas petition relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d); *Harrington v. Richter,* 562 U.S. 86, 97-98 (2011); *Rimmer v. Sec'y, Fla. Dep't of Corr.,* 876 F.3d 1039, 1053 (11th Cir. 2017).  Thus, district courts must first identify the last state court decision,

if any, that adjudicated the merits of the claim. *See Marshall v. Sec'y, Fla. Dep't of Corr.,* 828 F.3d 1277, 1285 (11th Cir. 2016). The state court is not required to issue an opinion explaining its rationale, because even the summary rejection of a claim, without explanation, qualifies as an adjudication on the merits which warrants deference. *See Harrington,* 562 U.S. at 100; *Meders,* 911 F.3d at 1351 (citation omitted).

Further, for purposes of federal habeas review, "clearly established federal law" consists of the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions at the time of the relevant state court decision. *Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Lee,* 726 F.3d at 1192 (citation omitted). "A Supreme Court decision, which is not dictated by precedent or is not made retroactive to cases on collateral review, handed down after the petitioner's conviction becomes final does not control the disposition of the petitioner's habeas proceeding." *Gary v. Hall,* 558 F.3d 1229, 1254 (11th Cir. 2009) (citing *Newland v. Hall,* 527 F.3d 1162, 1196–1201 (11th Cir. 2008)).

Petitioner bears the burden of establishing his right to federal habeas corpus relief and proving all of the facts necessary to demonstrate a constitutional violation. *See Fillmore v. Perry,* 163 F. App'x 819, 820 (11th Cir. 2006) (per curiam) (citing *Romine v. Head,* 253 F.3d 1349, 1357 (11th Cir. 2001)). Thus, to warrant relief, Petitioner must show that the state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Lee*, 726 F.3d at 1192 (quoting *Harrington,* 560 U.S. at 101-102). An unreasonable application of federal law differs from an incorrect application of federal law. *Renico*, 559 U.S. at 773 (citation omitted). Courts "apply this same standard when evaluating the reasonableness of a state court's decision under § 2254(d)(2)." *Landers v. Warden*, *Att'y Gen., State of Ala.,* 776 F.3d 1288, 1294 (11th Cir. 2015) (citations

omitted).   That is, "[a] state court's . . . determination of the facts is unreasonable only if no fairminded jurist could agree with the state court's determination . . . ."  *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (citations and internal quotation marks omitted).

Notably, where "no state court has adjudicated the merits of a claim that was properly presented, 'federal habeas review is not subject to the deferential standard that applies under AEDPA. . . . Instead, the claim is reviewed *de novo*.'"  *Reaves v. Sec'y, Fla. Dep't of Corr.,* 872 F.3d 1137, 1151 (11th Cir. 2017) (alteration in original) (quoting *Cone v. Bell,* 556 U.S. 449, 472 (2009).  Even where a state court decision "addresses some but not all of a defendant's claims," that decision is an adjudication "on the merits" for purposes of the AEDPA. *See Johnson v. Williams,* 568 U.S. 289, 298-99 (2013) (observing some claims may be too insubstantial to merit discussion).  The United States Supreme Court has cautioned that "federal courts have no authority to impose mandatory opinion-writing standards on state courts," and due to the heavy caseload shouldered by many appellate courts, "opinions issued by these courts must be read with that factor in mind." *Lee,* 726 F.3d at 1212 (quoting *Johnson,* 568 U.S. at 299-300).  In any event, federal courts are authorized to deny a federal relief when the claim is subject to rejection under *de novo* review, regardless of whether the AEDPA deference applies. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010)(holding federal courts can deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petition will not be entitled to habeas relief if his claim is rejected on *de novo* review); *Conner v. GDCP Warden,* 784 F.3d 752, 767, n. 16 (11th Cir. 2015) ("[B]ecause we conclude that Mr. Connor would not be entitled to habeas relief under *de novo* review, we affirm the District Court's denial of relief under that standard without resolving whether AEDPA deference applies.").

### B.      Ineffective Assistance of Counsel Principles

Petitioner's claims challenging counsel's effectiveness are governed by the Supreme Court's two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). The two-prong test requires Petitioner to demonstrate that: (1) counsel's performance was deficient, and (2) a reasonable probability that the deficiency resulted in prejudice. *See Strickland*, 466 U.S. 694. Deficient performance requires Petitioner to demonstrate counsel's actions were unreasonable or fell below prevailing professional competence demanded of defense attorneys. *Strickland*, 466 U.S. at 688. The *Strickland* deficiency prong does not require a showing of what the best or good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Even with the benefit of hindsight, where counsel's decision appears unwise, it will only be ineffective if it was so unreasonable no attorney would have chosen it. *Id.* at 1099. *Strickland*'s prejudice prong requires Petitioner to establish that, but for counsel's deficiency, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. If Petitioner cannot meet one of *Strickland*'s prongs, the Court need not address the other prong. *Id.* at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013). Also, bare and conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333-34 (11th Cir. 2012).

## IV.    DISCUSSION

### A.      Lawfulness of Stop and Ensuing Arrest

In **claim 1,** Petitioner asserts that his arrest is unlawful because it was based on an affidavit which lacked probable cause. [ECF No. 44 at 5]. In related **claim 2,** Petitioner challenges the

lawfulness of his arrest, challenging the stop of the vessel he was aboard because it was in international waters.  [ECF No. 44 at 7].

    1.   <u>Waiver of Defenses</u>

First, Petitioner's claims were waived by his knowing and voluntary no contest plea.  Since a guilty plea waives certain constitutional rights, the Fourteenth Amendment's Due Process Clause requires the plea to be both voluntary and knowing. *Rollins v. Sec'y, Fla. Dep't of Corr.,* 613 F. App'x 869, 870 (11th Cir. 2015) (citing *Gaddy v. Linahan,* 780 F.2d 935, 943 (11th Cir. 1986)). There must be an affirmative showing that the plea was intelligent and voluntary before a court accepts a guilty plea. *See Rollins,* 613 F. App'x at 870 (citing *Boykin v. Ala.,* 395 U.S. 238, 242–43 (1969)).

Under federal and Florida law, a plea is knowing and voluntary where the court, for example, satisfies "itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences." *Boykin,* 395 U.S. at 244, n.7 (quoting *Commonwealth ex rel. West v. Rundle,* 428 Pa. 102, 105-106, 237 A.2d 196, 197-198 (1968); and *Braddy v. State,* 111 So. 3d 810, 859 (Fla. 2012) (a guilty plea includes a confession to the acts which constitute the crime) (citing *McCrae v. State,* 395 So.2d 1145, 1154 (Fla. 1980) (quoting *Boykin,* 395 U.S.at 242). "Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality. The question of an effective waiver of a federal constitutional right ... is ... governed by federal standards." *Boykin,* 395 U.S. at 242–43.

Petitioner waived or more accurately forfeited his right to contest all non-jurisdictional defects and defenses, when he entered a knowing and voluntary no contest plea. *See United States v. Broce,* 488 U.S. 563, 764 (1989) (citing *McMann v. Richardson,* 397 U.S. 759, 770 (1970)

(voluntary guilty plea waives all non-jurisdictional defects)); *United States v. De La Garza,* 516 F.3d 1266, 1271 (11th Cir. 2008) (quoting *Wilson v. United States,* 962 F.2d 996 (11th Cir. 1992)(claim of ineffective assistance of counsel relating to pre-plea issues waived by voluntary guilty plea)).

At the October 2015 proceeding, Petitioner acknowledged and understood that by pleading no contest, he was waiving certain constitutional rights, including the right to a trial, to have the state prove the charges against him beyond a reasonable doubt, the right to conduct discovery, to confront and cross-examine witnesses, to call defense witnesses at trial, and to testify on his own behalf or remain silent, and that his silence could not be used against him.  [ECF No. 60 at p. 3].  Following a thorough colloquy with the court, Petitioner proceeded *pro se,* insisting on representing himself, and on wanting to plead no contest.  [*Id.* at 7, 13].  Petitioner also stipulated to the facts supporting the charged offenses.  [*Id.* at 16-17].  Although he then filed a motion to withdraw his plea, at a subsequent October 2015 proceeding, he advised the court that he did not really want to withdraw his plea, but was attempting to proffer grounds for a downward departure in sentence due to mitigating circumstances.  [*Id.* at 22-23].  When asked specifically what he wanted the court to do, Petitioner responded he wanted counsel appointed so that he could file a motion for downward departure and try to negotiate a better plea.  [*Id.* at 23].  Petitioner's request for counsel was granted, Attorney Smith was appointed, and sentencing continued until December 2, 2015.  [*Id.*].  Eventually, Petitioner appeared for sentencing on August 3, 2016, at which time he indicated he would be representing himself.  [ECF No. 60 at 66-67].  In response, the court conducted a *Faretta* hearing, wherein Petitioner affirmed understanding the charges against him, that he would not get any special treatment, nor would he be entitled to a continuance because he was representing himself.  [*Id.* at 67-68].  When considering an appropriate sentence, the court

indicated it needed "to have some reason to depart from that number," such as a "negotiated plea." [*Id.* at 75].  The State advised it was willing to agree to the imposition of a sixty-month term of imprisonment "as a negotiated plea as a downward departure to save you [petitioner] at least a year..." [*Id.*].  Petitioner insisted he did not want to serve any prison time on a negotiated plea. [*Id.* at 77].  Petitioner further requested that if a long prison sentence was required, that it be a probationary sentence rather than incarceration.  [*Id.*].

Petitioner has not alleged successfully, let alone demonstrated here nor in the state forum, that but for any purported error by the court or counsel, he would not have pleaded guilty and would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985). Petitioner's plea was knowing and voluntary, and therefore, he waived any defenses he may have had prior to the charged conduct. *See United States v. Moriarty,* 429 F.3d 1012, 1019 (2005) (per curiam). Petitioner's sworn declarations, under penalty of perjury, that no one coerced him to change his plea, carries a strong presumption that his representations are true. *United States v. Medlock,* 12 F.3d 185, 187 (11th Cir. 1994) (citing *United States v. Gonzalez-Mercado,* 808 F.2d 796, 799-800 (11th Cir. 1987)); *see also United States v. Rogers,* 848 F.2d 166, 168 (11th Cir. 1988) (per curiam) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.") (citing *United States v. Hauring,* 790 F.2d 1570, 1571 (11th Cir. 1986) (per curiam)).

It also cannot be overlooked that the entry of the guilty plea was clearly in the best interest of Petitioner. Because of the plea negotiated with the prosecution by defense counsel, Petitioner avoided a significantly higher term of life imprisonment, which could have been ordered to run concurrent or consecutive to the revocation judgment.

2.      Merits of Claims

Second, even if this court reaches the merits of the claims the appellate court's rejection of the claims on direct appeal comports with federal constitutional principles. As discussed below, the AEDPA affords a presumption of correctness to factual determinations made by a state court; and the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. §2254(e). Denial of relief here does not conflict with clearly established federal law, nor is it based upon an unreasonable determination of the facts. The rulings by the state court should, therefore, not be disturbed. *See Williams v. Taylor,* 529 U.S. 362 (2000).

(i)      *Lack of Probable Cause*

In **claim 1,** Petitioner asserts his arrest was unlawful because the arrest affidavit lacked probable cause.  [ECF No. 44 at 5].  In support, Petitioner maintains the probable cause affidavit (1) contains hearsay statements by Detective David Cruz and in a supplement by Deputy Curry; (2) lacks the signature of the Assistant State Attorney or court official; and, (3) was signed by Det. Cruz as a "CO (Corrections Officer), not a LEO."  [*Id.*].  Respondent argues the claim warrants no relief.  [ECF No. 62 at 15].  Respondent's argument is meritorious.

First, Petitioner's claim that the affidavit was not signed by a court official appears incorrect, as there is clearly a signature that demonstrates it was sworn to under oath by the signing individual who checked the box showing Det. Cruz was an LEO (law enforcement officer).  Thus, any argument on these bases is patently frivolous.

More importantly, his main argument that probable cause was based on hearsay is also meritless.  A claim challenging the lawfulness of a probable cause affidavit in support of an arrest warrant arises under the Fourth Amendment and *Franks v. Delaware*, 438 U.S. 154 (1978)

(holding that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held.").  Probable cause affidavits supporting arrest warrants are presumptively valid. *See United States v. Orr,* 819 F. App'x 756, 764 (11th Cir. 2020) (per curiam) (citing *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990) (per curiam) (citing *Franks*, 438 U.S. at 171)). A lower court's determination of probable cause is entitled to "[g]reat deference." *See id.* (quoting *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) (per curiam) (citation omitted)).  Where it appears that the facts from the affidavit would lead a "'reasonably discreet and prudent [person]' to believe that the charged offense was committed, there is probable cause justifying the issuance of the warrant." *Id.* at 764-65 (quoting *Jenkins*, 901 F.2d at 1080) (citation omitted)).

Further, hearsay may form the basis for issuance of a warrant so long as there is a substantial basis for crediting the hearsay. *See United States v. Ventresca,* 380 U.S. 102, 108 (1965). Notably, a victim of a crime is presumed to be trustworthy for purposes of establishing probable cause in an affidavit for a warrant. *State v. Hood,* 68 So.3d 392, 396 (Fla. 2d DCA 2011) (citing *State v. Novak,* 502 So.2d 990, 992 (Fla. 3d DCA 1987)).  To the extent the probable cause affidavit contained hearsay statements of the victim, the contents of the affidavit were sufficiently trustworthy to establish probable cause for Petitioner's arrest. *See Ventresca,* 380 U.S. at 108, 85 *Hood,* 68 So.3d at 396.  Nothing in Fla. R. Crim. P. 3.121, which governs arrests warrants in Florida, requires written statements from the victim.  *See Fla. R. Crim. P. 3.121; see also Johnson v. State,* 660 So.2d 648, 654 (Fla. 1995) (citations omitted) (noting that "[u]nlike the burdens of proof in a criminal trial, the obligation to establish probable cause in an affidavit may be met by

hearsay, by fleeting observations, or by tips received from unnamed reliable informants whose identities often may not lawfully be disclosed among other reasons.").

The Monroe County Sheriff's Arrest Report section entitled "Statement of Probable Cause/Narrative" signed by Dep. Cruz, reveals that on September 17, 2015, he responded to Hurricane Hole Marina in reference to a stolen boat.  [ECF No. 61-5, Ex. UUU at 79].  Upon his arrival, he met with the victim, Charles Dinney ("Dinney"), who stated he owns a gray 2001, 31-foot Yellowfin boat with a black t-top and 2015, 250 hp Suzuki outboard engines, which he charters under Tails 2 Sails.  [*Id.*].  Dinney stated that after he noticed his boat was not at the dock, he reviewed the marina's surveillance video with the marina manager, Jay Ward, and discovered a male walking down the dock at 5:30 a.m. and onto the Yellowfin, starting the engines, untying the boat, and backing it out of the slip.  [*Id.*].  At around 6:30 a.m., Dinney received a call from his friend, Michael Burge, who lives on 12th Avenue in Stock Island, stating he had seen Dinney's boat idling south in the Cow Key Channel around 6:30 a.m. and thought it was early for Dinney to be out on the water.  [*Id.*].  Det. Cruz states that around 3:34 p.m. that day, he received a dispatch call that the boat was at the Yacht Clubs of America on Peninsular Avenue in Stock Island where it was getting refueled.  [*Id.*].  As Deputy Curry arrived, the vessel was leaving, so Dep. Curry gave a clear verbal command for the vessel to be backed up to the dock.  [*Id.*].  Although the suspect responded "okay," he then drove away, operating the vessel in the marina basin in an unsafe manner.  [*Id.* at 80].  Det. Cruz further stated that dispatch notified several agencies, including "FWC, U.S. Coast Guard and U.S. Customs and Boarder Protection," who chased the stolen vessel, using their water and air assets.  [*Id.*].  After agents with U.S. Customs and Board Protection ("CBP") made contact with the stolen Yellowfin, approximately 30 miles south of Key West, they boarded the vessel, after which they asked Petitioner about its ownership.  [*Id.*].  When

Petitioner responded that he did not know who owned the vessel, he was taken into custody and transported back to the Key West Coast Guard Station.  [*Id.*].  Dinney was contacted and took possession of his vessel, and Petitioner was turned over to Dep. Curry and transported to county jail.  [*Id.*].  Clothing and gear matching the description of the suspect seen on the marina video surveillance was inventoried and submitted into evidence.  [*Id.*].  Dep. Cruz further narrated that Petitioner was being charged with grand theft and resisting arrest without violence.  [*Id.*].

In his supplement, Dep. Curry notes he was on patrol on September 17, 2015 at 3:34 p.m. when he responded to a dispatch call, from an individual identified as Shannon, advising that a vessel stolen earlier that morning was at the Key West Harbor Yacht Club's fuel dock.  [*Id.*]. Shannon further indicated that the suspect was paying for fuel and making comments about going to Cuba.  [*Id.*].  At the time, Shannon recalled the suspect was wearing a black hat, khaki shorts, flip flops, and a gray jacket.  [*Id.*].  Upon arriving at the Yacht Club, Dep. Curry observed the stolen Yellowfin vessel untying from the fuel dock.  [*Id.*].  Dep. Curry, who was dressed in full uniform, gave a clear verbal command for Petitioner to back the vessel back onto the dock.  [*Id.*]. Although the suspect said he would do so, he did not, putting the boat in forward gear and throttling up, making the vessel plane at a high rate of a speed, in an unsafe manner, in the middle of the busy marina basin.  [*Id.*].  Dep. Curry gave dispatch the information and returned to the ship store where he met with Shannon, a dock hand, Eric Wachter, and a store clerk, Chelsey Rowley.  [*Id. at 81*].  Following interviews of these witnesses, Dep. Curry learned that Petitioner asked Wachter for $160 worth of fuel, and after realizing that the vessel was the one reported stolen earlier that day, Wachter contacted Shannon who contacted the police.  [*Id.*].  Dep. Curry affirmed that he reviewed video surveillance of the Yacht Club which revealed the individual aboard the stolen Yellowfin is the same individual Dep. Curry observed earlier on surveillance stealing the vessel

from the Hurricane Hole Marina.  [*Id.*].  The t-shirt Petitioner was seen wearing had a business logo on it, and the business owner, Victor, was contacted, and after reviewing the video, identified the suspect as "Stephen," and advised that John Sunt had hired Stephen to help him do some boat work the day before.  [*Id.*].  Dep. Curry spoke with Sunt, who advised he had a copy of Stephen's driver's license. [*Id.*].  While speaking with Sunt, dispatched notified them that the vessel had been stopped and Petitioner was in custody.  [*Id.*].  Later, Dep. Curry met with Sunt, who confirmed Petitioner had worked with him on September 16, 2015 until approximately 7:00 p.m.  [*Id.*].  According to John, the following morning Petitioner arrived at 3D Boat Yard, pointed to a boat tied up next to a shrimp boat, and told him that the vessel, a center console, with a black t-top, and twin Suzuki engines, belonged to him.  [*Id.*].  Sunt recalled Petitioner advising him he was going to take the boat to Cuba and sell it. [*Id.* at 82].  When Sunt told him he may get into trouble with the police, Sunt recalled Petitioner responded that he did not care if they shot out his engines, that he was going to get close to Cuba, waive his hands in the air, and ask to go to the embassy so that he can be transferred to Switzerland.  [*Id.*].  Sunt showed Dep. Curry a copy of the license plate of the stolen vessel, claiming Petitioner had asked him to photograph it, because he might get into trouble and need his help.  [*Id.*].  Later, Dep. Curry recalled returning to the Key West Coast Guard Center where he met with Det. Cruz, and where he also verified that the suspect in custody was the same person he previously observed operating the stolen vessel.  [*Id.*].

Any challenge to the probable cause affidavit on the bases claimed would have been meritless.  There was more than trustworthy hearsay and personal observations from the officers regarding the charged offenses.  Therefore, the rejection of the claim on direct appeal, *Leonard v. State,* No. 3D16-2298, 270 So. 3d 1241 (Fla. 3d DCA Feb. 27, 2019) (unpublished table decision);

[ECF No. 61-2, Ex. JJ at 29; ECF No. 61-3, Ex. KK at 2] is entitled to deference here. Relief is not warranted on this meritless claim.

      (ii)    *State's Lack of Jurisdiction to Prosecute*

In **claim 2,** Petitioner asserts that the vessel was in international waters when it was boarded by CBP and he was taken into custody. [ECF No. 44 at 7]. He admits he "commandeered a federally registered commercial fishing vessel while it was moored at the Key West National Wildlife Refuge," but drove it from "U.S. federal waters" into "international waters." [*Id.*]. Petitioner explains he was observed by a "F.W.C. spotter plane about 40 miles south of Key West, in internal waters," so he called CBP and the U.S. Coast Guard. [*Id.*]. Petitioner next states that the vessel was approximately 43 miles south of Key West when CBP intercepted and attempted to stop the Yellowfin vessel. [*Id.*]. Petitioner concedes a high-speed chase ensued when he "made a run for Cuban waters" seeking political asylum, but admits CBP stopped, boarded, and arrested Petitioner approximately 45 miles south of Key West, returning him to the United States. [*Id.*].

Respondent argues correctly that this claim is meritless. [ECF No. 62 at 16-18]. The Supreme Court has made clear that Florida can prosecute its citizens for violating state laws, even if the crime occurs in the oceans outside of Florida's territorial waters. *See Skiriotes v. Fla.,* 313 U.S. 69, 77 (1941). In *Skirotes,* the Supreme Court upheld a conviction for using diving equipment in the taking of sponges from the Gulf of Mexico "at a point approximately two marine leagues (six geographic miles)" from the Florida coast, in violation of Florida law. *Id.* at 70-71. Like Petitioner, the defendant in *Skirotes* argued that the criminal jurisdiction of Florida could not extend into international waters. *Id.* at 71. Because the *Skirotes* defendant was a Florida citizen whose prosecution involved only domestic rights and duties rather than questions of international relations, arguments based on the territorial limits of United States waters were regarded by the

Supreme Court as irrelevant, finding "nothing novel in the doctrine that a State may exercise its authority over its citizens on the high seas." *Id.* at 77. The Supreme Court found "no reason why the State of Florida may not likewise govern the conduct of its citizens upon the high seas with respect to matters in which the State has a legitimate interest and where there is no conflict with acts of Congress." *Id.* Moreover, under Fla. Stat. § 910.005(1)(a)-(d), Florida has subject matter jurisdiction over a defendant who commits a criminal offense, "while within or outside the state, by her or his own conduct" if the offense is "committed wholly or partly within the state;" or, "the conduct outside the state constitutes an attempt to commit an offense within the state." *Id.* Florida law further provides that "jurisdiction is to be determined solely from the face of the information." *McLean v. State,* 23 Fla. 281, 2 So. 5 (1887); *State v. Vazquez,* 450 So. 2d 203 (Fla. 1984); *State v. Croy,* 813 So. 2d 993, 996 (Fla. 1st DCA 2003).

Here, Petitioner is a Florida citizen who stole a Yellowfin vessel from its mooring at a Key West marina, driving it out of a marina in an unsafe manner, after which a chase ensued until the vessel was intercepted. The Information charged Petitioner with grand theft and fleeing and eluding in a vessel, with both events occurring within the State of Florida. *See* [ECF No. 61, Ex. C at p. 16]. Thus, "when one of the essential elements of the offense occurs in Florida, Florida courts have the power to try the defendant, whether an essential element of the offense occurred within the state." *See Keen v. State,* 504 So. 2d 396, 399 (Fla. 1987), *overruled on other grounds by Owen v. State,* 596 So. 2d 985, 990 (Fla. 1992). Florida had jurisdiction to prosecute and convict Petitioner since the events began within the state and on Florida waters, so that any argument on the bases that the seizure of the vessel and his arrest were unlawful fails. Florida was entitled to exercise its criminal jurisdiction, under the circumstances of this case, to the full extent of its

boundaries as defined by the Florida Constitution.  Thus, the rejection of the claim on direct appeal was not contrary to federal or Florida constitutional principles and should not be disturbed here.

## B.   *Ineffective Assistance of Appellate Counsel on Direct Appeal*

In **claim 5,** Petitioner asserts that appellate counsel failed to include in the record on appeal transcripts of the September 30, 2015 arraignment, and the July 1st and July 8th, 2016 pre-trial conferences.  [ECF No. 44 at 16].  Petitioner claims counsel on appeal never notified him or sought his consent to exclude these transcripts from the record on appeal, disregarding Petitioner's explicit request that they be included.  [*Id.*].  Petitioner maintains that between May 2017 and February 2019, the court reporter failed to submit the transcripts which were directly relevant to the claims presented on direct appeal.  [*Id.*].  Respondent argues that Petitioner is not entitled to relief on this claim, having failed to demonstrate *Strickland* deficiency.  [ECF No. 62 at 28].

On appeal, Petitioner claims he requested that transcripts be included on the record on appeal for hearings held on September 18, 2015, September 22, 2015, September 30, 2015, October 7, 2015, June 15, 2016, July 1, 2016, July 6, 2016, July 8, 2016, and July 11, 2016.  [ECF No. 61-5, Ex. VVV at 93, 94].  Pursuant to the appellate court's order, the State advised the Court that the court reporter had indicated no hearings had been held, in relevant part, on September 9, 2015, October 7, 2015, July 15, 2016, and July 6, 2016.  [*Id.,* Ex. WWW at 97-98].  The State further indicated that after review of the court "case summary," no hearings were held on September 18, 2015 or September 30, 2015. [*Id.* at 98].  The State represented that it had "thoroughly reviewed the record on appeal and all transcripts after the case was assigned to her and it did not appear to counsel that anything was missing from the record....it did not appear to counsel that the clerk and court reporter suppressed, withheld, or altered the record on appeal in an effort to avoid disclosure of unconstitutional actions that occurred in the trial court."  [*Id.*].

First, Respondent's argument is meritorious. Petitioner cannot demonstrate *Strickland* deficiency or prejudice arising from the complained of missing transcripts. While it appears that there was a September 18, 2015 proceeding that was subsequently transcribed and made part of the state court record, it appears this proceeding involves Petitioner's arraignment, but nowhere does it indicate that Petitioner wished to plead no contest.[7] Also, a transcript of a July 6, 2016 proceeding was also made part of the state court record, but concerned the discharge of counsel and the court's finding Petitioner could proceed *pro* se.[8] Review of the state criminal on-line docket does not reveal that transcripts of the remaining proceedings were made part of the record at any time. Even if they had been, but had not been included on direct appeal, Petitioner is not entitled to relief. As will be recalled, after appellate counsel moved to withdraw and filed an *Anders* brief on appeal, Petitioner was given an opportunity to and did, in fact, file a supplemental brief on appeal. If, as he suggests, he needed additional transcripts to support his claims, he could have requested leave from the appellate court to return to the state court and obtain, at a minimum, the two proceedings previously mentioned. But, even had he done so, nothing in those documents suggests they would have affected the outcome of his direct appeal. Moreover, he provided no information either in the state forum or this habeas proceeding to confirm how these proceedings were relevant or supported the claims raised on appeal. For all of these reasons, Petitioner, who was *pro se* on appeal, cannot prevail on this claim. Therefore, the rejection of this claim on direct appeal did not violate federal constitutional principles and should not be disturbed here.

---

[7] A copy of the transcript is being made part of this record by separate court order.

[8] A copy of the transcript is being made part of this record by separate court order.

## V.      CAUTIONARY INSTRUCTION RE *CLISBY*[9] RULE

The Court is mindful that *Clisby* requires district courts to address and resolve all claims raised in habeas corpus proceedings, regardless of whether relief is granted or denied. *Clisby,* 960 F.2d at 936-36. However, nothing in *Clisby* requires, much less suggests, consideration of claims or arguments raised for the first time in objections. If Petitioner attempts to raise arguments or further factual support for his claim in objections, the Court should exercise its broad discretion and refuse to consider the arguments not raised before the Magistrate Judge in the first instance. *See Williams v. McNeil,* 557 F.3d 1287, 1292 (11th Cir. 2009) (finding no abuse of discretion by the district court in declining to consider timeliness argument that was not presented to the magistrate judge).

Finally, the Undersigned has considered all of Petitioner's arguments in support of his claims for relief. *See Dupree v. Warden,* 715 F.3d 1295, 1299 (11th Cir. 2013) (finding that courts shall review petitioner's claims so long as the claims are presented in a clear and simple language so that the court may not misunderstand it). Petitioner has failed to demonstrate how the state courts' denial of the claims, to the extent they were considered on the merits in the state forum, were contrary to, or the product of an unreasonable application of, clearly established federal law. To the extent a claim was not considered in the state forum, under *de novo* review, the claims do not warrant relief. Whether a precise argument was not specifically addressed herein or in the state forum, all arguments were considered and found to be devoid of merit, even if not discussed in detail.

---

[9] *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992).

## VI.    CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, it is recommended that no Certificate of Appealability ("COA") issue.  Rule 11(a) of the Rules Governing Section 2254 Cases in the U.S. District Courts provides that "[t]he district court must issue a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254.  Thus, a prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell,* 556 U.S. 180, 183 (2009) (citing *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000) and *Wilkinson v. Dotson,* 544 U.S. 74, 78-83 (2005)). A certificate of appealability should issue only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Miller-El,* 537 U.S. at 335 (quoting 28 U.S.C. § 2253(c)). Where a district court has rejected a petitioner's constitutional claims on the merits, a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack,* 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, a petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Here, the Court finds Petitioner cannot make either showing to warrant granting a certificate of appealability.  Accordingly, this Court should deny a certificate of appealability in its final order.  If Petitioner does not agree, he may bring this argument to the attention of the District Judge in objections.

## VII.   RECOMMENDATIONS

Based upon the foregoing, it is recommended that the § 2254 Petition [ECF No. 44] be **DENIED**; final judgment be entered in favor of Respondent; a certificate of appealability be DENIED; and, the case CLOSED.

## VIII.   NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report with the U.S. District Court Judge for the Southern District of Florida, within FOURTEEN (14) DAYS of being served with a copy of this Report.  *See* 28 U.S.C. § 636(b)(1)(C).  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  *See* 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4,* 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**DONE AND RECOMMENDED** in Chambers at West Palm Beach, in the Southern District of Florida, this 12th day of April, 2021.

DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE

cc:
Stephen Daniel Leonard, *Pro Se*
2343 Bonner Gilbert Road
Lizella, GA  31052

Magaly Rodriguez, Ass't Att'y Gen.
Office of the Attorney General
Rivergate Plaza
444 Brickell Avenue, Suite 650
Miami, FL 33131
Email: Magaly.Rodriguez@myfloridalegal.com